Nancy A. HOWARD, Petitioner–
Respondent,

v.

**MISSOURI STATE BOARD OF
EDUCATION, Appellant.**

No. 18122.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 1993.

William L. Webster, Atty. Gen., Edwin H. Steinmann, Jr., Jane E. Eilermann, Asst. Attys. Gen., Jefferson City, for appellant.

Craig Alden Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for petitioner-respondent.

FLANIGAN, Judge.

The Missouri State Board of Education (the Board), appellant here, revoked two "certificates of license to teach" of Nancy Howard, respondent here, on the ground that she had "engaged in immorality under the law." The order of revocation was the culmination of a proceeding before the Board, instituted by the Springfield R–12 School District, pursuant to § 168.071.[1] Howard was employed by the District as a substitute teacher beginning in September 1986 and ending on September 11, 1990, when she was notified that the District would "not be using [her] services as a substitute teacher for the 1990–91 school year." Howard was never a full time probationary or permanent teacher for the District.

The proceedings before the Board were initiated by written charges which the District preferred against Howard. The charges alleged, in general, that in August 1990 Howard was guilty of misconduct involving boys between the ages of 12 and 15. The alleged misconduct included soliciting sexual relations with the boys, telling the mother of two of them that she wanted to have intercourse with one of them, telling the mother that she had tried to "french kiss" one of the boys, telling the boys that she had sexual intercourse "with four guys the night before, two at a time," "chasing the neighborhood boys around and grabbing at the boys, and hanging all over them," and approaching a 12–year–old boy and "drop[ping] her panties and lift[ing] up her blouse in front of him."

A hearing on the charges was held before the Board's hearing officer on April 3, 1991. Present at that hearing were How-

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

ard, her attorney, the attorney for the District, and an assistant attorney general. A written stipulation, executed by Howard and the District and their respective attorneys, was filed and presented to the hearing officer. On May 17, 1991, the Board, "after reviewing materials resulting from the hearing," made certain findings of fact and conclusions of law and entered the order of revocation.

Howard filed, timely, her petition for review in the circuit court. Significantly, § 168.071, dealing with such a petition for review, reads, in pertinent part: "On appeal the judge shall, with or without a jury at the option either of the teacher or the person making the complaint, *try the matter de novo*, affirming or denying the action of the certificating authority." (Emphasis added.)

Before any evidence was received by the circuit court, Howard filed a motion for summary judgment. The court sustained the motion and entered judgment in favor of Howard, which had the effect of denying the Board's order of revocation. The Board appeals.

The Board contends that the trial court erred in granting Howard's motion for summary judgment because: (a) the trial court failed to review, de novo, the Board's order of revocation, in violation of § 168.071; (b) there were genuine issues as to material facts, and Howard was not entitled to judgment as a matter of law; and (c) the trial court "applied a subjective standard (Mens Rea) to determine 'immorality,' rather than an objective standard under § 168.071." For the reasons which follow, this court finds merit in prongs (a) and (b). It is, therefore, unnecessary to consider prong (c), as the instant judgment has no evidentiary basis.

In *Gast v. Ebert*, 739 S.W.2d 545 (Mo. banc 1987), the court said, 739 S.W.2d at 546:

When reviewing a ruling on a motion for summary judgment an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence. Summary judgment is a drastic remedy and is inappropriate unless the prevailing party has shown by unassailable proof that he is entitled to judgment as a matter of law. The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a fact. (Authorities omitted.)

A motion for summary judgment "shall state with particularity the grounds therefor." Rule 74.04(c). The grounds contained in Howard's motion for summary judgment were, in essence: At the hearing of April 3, 1991, while the matter was pending before the Board, the parties filed a stipulation, a copy of which is attached; in paragraph 12(e) of the stipulation, the parties agreed that Howard would present evidence in her defense which would tend to support the fact that any aberrant behavior exhibited by Howard was the result of her mental disorder or its treatment and not attributable to a lack of morality or intent to commit immoral acts; there was no basis for the Board to conclude that Howard "engaged in immorality under the law"; the stipulation is binding upon the parties and this court as a matter of law, and evidence to contradict the stipulation is not admissible at any hearing before this court.

The stipulation, in addition to stating some of the facts set forth earlier in this opinion, reads, in pertinent part:

STATE OF MISSOURI

DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION

THE SPRINGFIELD R–12 SCHOOL DISTRICT, Petitioner,

and

NANCY A. HOWARD, Respondent.

STIPULATIONS OF FACT AND LAW

COME NOW Petitioner and Respondent in the above-styled matter and stipulate to the following matters:

.     .     .     .     .

4. Nancy A. Howard ("Howard") currently holds a Librarian Life Certificate for grades 1 through 12, and a Social Studies Life Certificate for grades 7 through 12.

.   .   .   .   .

7. [A true and correct copy of the "charges preferred against Nancy Howard" is attached.]

.   .   .   .   .

10. *Howard does not admit the incidents alleged in the Charges. For the purposes of this stipulation, Howard admits, however, that if a hearing takes place, the evidence presented therein would tend to support* the allegations contained in the Charges.

11. District and Howard recognize that the State Board of Education has the authority, pursuant to § 168.071, R.S.Mo., to revoke or suspend Howard's certificate of license to teach. District would not oppose the imposition of a suspension of Howard's certificate of license to teach for a period of not less than six (6) months. The decision as to the length of the suspension beyond that point, and the conditions for the lifting of such suspension, shall be in the discretion of the State Board of Education.

12. *If a hearing were to take place, Howard would present evidence in her defense tending to support the following:* [Throughout the eight months preceding August 6, 1990, Howard was under the care of Dr. James Bright, a psychiatrist, and Dr. Don Menchetti, her general physician. During the course of her treatment, Howard was prescribed certain medications; "Any aberrant behavior exhibited by Howard was the result of her mental disorder or its treatment and not attributable to a lack of morality or intent to commit immoral acts"; Howard is now under the care of Dr. Laird Jones, a psychiatrist; Dr. Jones believes that Howard will continue to show improvement "allowing her to resume normal duties and responsibilities in a classroom setting, and preventing a reoccurrence (sic) of any aberrant behavior patterns."]

13. Howard and the District agree that a suspension as described above would be in the best interests of Howard, District, DESE, and the students and children of the State of Missouri, and that Howard be afforded a full opportunity to have the suspension lifted by the State Board of Education upon presentation by Howard, her treating physicians, and others of competent evidence demonstrating that she is capable of resuming full classroom duties and responsibilities as reasonably required by the State Board of Education. (Emphasis added.)

It should be noted that the stipulation was presented at the hearing before the Board. It was not presented to the circuit court by the parties. It was merely attached to Howard's motion for summary judgment.

■ A stipulation is an agreement between counsel with respect to business before a court, and is not one of the usual pleadings, but is a proceeding in the cause and as such is under the supervision of the court. *Pierson v. Allen*, 409 S.W.2d 127, 130[3] (Mo.1966). Stipulations are controlling and conclusive, and courts are bound to enforce them. A stipulation should be interpreted in view of the result which the parties were attempting to accomplish. *Id.* at 130.

■ Courts ordinarily look with favor on stipulations designed to simplify, shorten, or settle litigation and save costs to the parties, and such stipulations should be encouraged by the courts rather than discouraged, and enforced by them unless good cause is shown to the contrary. *State ex rel. Turri v. Keet*, 626 S.W.2d 422, 425 (Mo.App.1981).

■ The rules applicable to the construction of contracts generally govern the courts in their interpretation of stipulations, and thus stipulations will receive a reasonable construction with a view to effecting the intent of the parties; but in seeking the intention of the parties, the language used will not be so construed as to give it the effect of an admission of a fact obviously intended to be controverted,

or the waiver of a right not plainly intended to be relinquished. *Huegel v. Huegel,* 329 Mo. 571, 46 S.W.2d 157, 158 (Mo. banc 1932). See also *Ezenwa v. Director of Revenue,* 791 S.W.2d 854, 859 (Mo.App. 1990). The general rule is that stipulations of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law. *State v. Biddle,* 599 S.W.2d 182, 186 n. 4 (Mo. banc 1980).

"A stipulation fairly entered into as to some *fact* in issue at a trial becomes a part of the record and is binding upon the parties and the court upon a subsequent trial of the same action, provided its terms do not limit it to a particular occasion, object or proceeding." *Edwards v. Hrebec,* 414 S.W.2d 361, 366[6] (Mo.App.1967) (emphasis added.)

▆▆▆ A stipulation as to the testimony an absent witness would give if present does not amount to an admission of truth of such testimony. 73 Am.Jur.2d, Stipulations, § 7. A stipulation that a witness, if called, would give testimony of a particular kind or character, or in a particular manner, is not necessarily binding upon the trier of facts, thus leaving it free to consider the weight and credibility of such evidence the same as any other evidence adduced on the trial in the case. Likewise, such stipulation does not foreclose impeachment by the opposing party, and in effect merely waives the adverse party's right to cross-examine that particular witness. *Id.* § 17. Similarly, "A stipulation as to the testimony a witness would give, if called, may constitute evidence of the fact involved, but is not an admission of the truth of such evidence and does not prevent a party from attacking it." 83 C.J.S., Stipulations, § 23f. Missouri cases are in accord.

In *Monroe v. Lyons,* 339 Mo. 515, 98 S.W.2d 544 (1936), the validity of a deed executed by defendants as grantors was a crucial issue. Defendants contended that the deed was void because it was the product of undue influence. In support of that contention, defendants relied upon a stipulation which read, in pertinent part: "It is stipulated that defendants have witnesses who will testify that [the grantee] threatened to take her own life ... if ... defendants ... did not execute the [deed] ... and further threatening that if defendants did not ... execute said instrument that she would disinherit them; that ... defendants signed said instrument under and as a result of such threats."

Defendants argued that it was agreed in the stipulation that defendants signed the deed as a result of the threats made by the grantee. Rejecting that contention, the supreme court said, Id. at 547–548:

This is a misconception of the stipulation. An examination of the stipulation will show that instead of agreeing that the deed was made as a result of the threats, the parties simply agreed that defendant had witnesses who would so testify. Such testimony is a mere opinion and conclusion of the witness giving it, invades the province of the trier of the fact, and has no probative value as evidence.

In *Gaddy v. State Bd. of Registration for Healing Arts,* 397 S.W.2d 347 (Mo.App. 1965), the State Board of Registration for the Healing Arts revoked the license of an osteopath, Henry F. Gaddy, D.O. The basis for the board's action was that Dr. Gaddy was addicted to the habitual use of narcotic drugs. Dr. Gaddy sought judicial review in the circuit court which reviewed the matter, under applicable statutes, as a contested case under § 536.140 and not de novo. The circuit court affirmed the order of the board, and Dr. Gaddy appealed.

At the hearing before the board, Dr. Gaddy's counsel moved for a continuance because of the absence of certain doctors. Gaddy's counsel inquired of opposing counsel whether it might be stipulated that the absent doctors would, if present, testify that Gaddy was not addicted to the use of narcotic drugs. Opposing counsel agreed so to stipulate.

In affirming the judgment of the circuit court, this court said, 397 S.W.2d at 355, that if the absent doctors had testified in person "they could have done no more than to have offered their opinion evidence as expert witnesses, and the weight and value

to be accorded to their testimony would have been for the Board as trier of the facts."

In *State v. Jones,* 549 S.W.2d 925 (Mo. App.1977), a criminal case was tried twice. A stipulation was made at the first trial, and the issue was whether that stipulation was binding on the state at the second trial. The stipulation at the first trial was that the state would not call a certain witness if the defendant did not testify. At the second trial, the defendant attempted to rely on the stipulation made at the first trial and did not testify. Holding that the stipulation was not binding on the state in the second trial, the court said, 549 S.W.2d at 926–927:

> We perceive a material difference between two types of trial stipulations and the continuing force of each.
>
> By one type of stipulation the parties agree to the existence or non-existence of material *facts* involved in their lawsuit, and they thereby alter the justiciable issues. Once this is done the stipulated agreement generally remains in effect at retrial.... Each of [the cited] cases upheld the continuing force of a stipulation of fact which had limited and fixed the justiciable issues of the lawsuit.
>
> As said, there is a material difference between the continuing force of parties' stipulation as to the *facts* which change the very nature of the issues to be tried, and on the other hand the parties' stipulation as to some *procedural matter.*
>
> In effect, the stipulation here was: "If A does not testify, B will not testify." That did not change the issues of the case but merely restricted the manner of proving an issue. None of the previously cited cases on the continuing force of stipulations of material facts is relevant here where the stipulation concerned only the manner of proof. (Emphasis in original.)

■ Seeking to uphold the trial court's ruling, Howard argues, "the court accepted as true the facts stipulated to by the parties and concluded as a matter of law that Howard did not engage in 'immorality' under these facts."

Paragraph 10 of the stipulation did not constitute an agreement by the parties that Howard had committed the acts with which she was charged. The first sentence of paragraph 10 contains Howard's express denial. The second sentence of paragraph 10 contains Howard's admission "for the purposes of this stipulation" that witnesses, if called, would present testimony supporting the charges.

Paragraph 12 of the stipulation, on which Howard places her principal reliance, does not constitute an agreement of the parties to the *fact* that any aberrant behavior on the part of Howard was the result of her mental disorder or treatment and not attributable to "a lack of morality." Paragraph 12 was simply an agreement that if the absent witnesses, the three doctors, were called to testify, their testimony before the Board would be to that effect.

A stipulation as to the testimony an absent witness would give if present does not amount to the admission of truth of such testimony. Such testimony is not necessarily binding upon the trier of facts, and the trier is free to consider the weight and credibility of such evidence the same as any other evidence adduced in the trial of the case. The stipulation does not foreclose impeachment by the opposing party. A mere conclusion of a medical witness as to whether conduct constituted immorality would have no probative value as evidence.

The stipulation here is akin to the one in *State v. Jones, supra.* It was not a stipulation as to the existence or non-existence of material facts. It was merely a stipulation as to a procedural matter pending before the Board.

Paragraphs 11 and 13 of the stipulation seem to indicate that the District and Howard desired and anticipated that the proceedings would end with an order of suspension. Under § 168.071, however, an order of suspension requires "satisfactory proof" of one of several enumerated grounds, including immorality. To adopt Howard's view of the stipulation, it might be argued that that ground existed because it was a necessary predicate to an order of suspension.

The parties were aware, at the time the stipulation was presented to the Board, that if there was a subsequent proceeding in the circuit court it would be a de novo proceeding. The evidence to be adduced would include matters of a lewd and sordid nature. It is likely the parties intended to spare the numerous witnesses, some of tender years and some professional, the stress, time and expense involved in presenting essentially the same evidence twice.

No matter what the evidence was before the Board, a trial de novo "allows the circuit court to determine for itself, on evidence presented to it afresh," *Jarvis v. Director of Revenue*, 804 S.W.2d 22, 25 (Mo. banc 1991), the propriety of the Board's order of revocation. In *Killeron v. American Bankers Ins. Co.*, 733 S.W.2d 442, 443, n. 3 (Mo. banc 1987), the court gave this definition of trial de novo: "A new trial or retrial had in which the whole case is retried as if no trial whatever had been had in the first instance."

It was the duty of the circuit court to try the matter de novo. In view of the content of Howard's motion for summary judgment, that motion and the ruling thereon did not fulfill that duty.

This court holds that the trial court erred in sustaining Howard's motion for summary judgment. The judgment is reversed and the cause remanded.

MONTGOMERY, P.J., and GARRISON, J., concur.