**STATE of Missouri, Appellant,**

v.

**Jonathan B. ABELN, Respondent.**

**No. WD 62180.**

Missouri Court of Appeals,
Western District.

May 11, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2004.

Timothy W. Anderson, Assistant Attorney General, Jefferson City, MO, for appellant.

Frederick P. Tucker, Moberly, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and ROBERT G. ULRICH, Judge.

JOSEPH M. ELLIS, Judge.

The State of Missouri appeals from an order entered by the Circuit Court of Macon County sustaining Respondent Jonathan B. Abeln's motion to suppress evidence sought to be introduced in the criminal case against him.[1] For the following reasons, we affirm.

## I.

On December 13, 2001, Missouri State Highway Patrol Trooper Steve Wilhoit stopped Respondent's truck as he was traveling west on U.S. Highway 36 east of Bevier, Missouri. Based on evidence obtained after Abeln's vehicle was stopped, Abeln was charged with attempting to produce a controlled substance, § 195.211,[2] possession of a chemical with the intent to create a controlled substance, § 195.420, and possession of a controlled substance, § 195.202.

Prior to trial on those charges, Abeln filed a motion to suppress the evidence resulting from the traffic stop that led to his arrest, asserting the stop was improper and violated his Fourth Amendment right to protection against unreasonable seizure.

In opposing Abeln's motion, the State relied entirely upon a written stipulation

---

1. The State brings this appeal pursuant to § 547.200.1(3), RSMo 2000.

2. All statutory references are to RSMo 2000 unless otherwise noted.

as to the testimony Trooper Wilhoit would offer. By way of the stipulation, Trooper Wilhoit offered the following testimony. Trooper Wilhoit stated that he was driving west on U.S. Highway 36 when he received a dispatch indicating that an individual wearing a tan colored Carhart coat had been seen picking up a case of starter fluid at the Macon, Missouri Orscheln store. The dispatch further indicated that the individual put the case down after noticing people watching him, that he purchased one can of starter fluid and that he drove away in a burgundy pickup truck. The dispatch also indicated that Orscheln employees had seen the individual purchasing funnels and hoses earlier in the week. Trooper Wilhoit claimed that moments later he saw a burgundy pickup truck driven by a man wearing a tan Carhart coat driving east on U.S. Highway 36. Trooper Wilhoit indicated that he then made a U-turn across the median in his patrol car and started after the truck. The trooper testified that he could not get directly behind the truck because the highway changed to two-lanes before he reached the truck and another vehicle was between his patrol car and the truck. Trooper Wilhoit testified that he saw the individual reach toward the glove box, an action the trooper described as "furtive." The trooper claimed that, in correlation with the individual's movements toward the glove box, he "observed on 2 occasions ... that the passenger side tires of the truck traveled over what is commonly referred to as the fog line." He asserted that the individual's movements toward the glove box caused him "to go over to the shoulder." The trooper stated that he then passed the other vehicle, called the radio operator and ran a check on the license plate on the truck. The trooper indicated that the check revealed that the truck was registered to Abeln. Trooper Wilhoit further stated that he "had received information

that Jonathon [sic] Abeln was involved in local methamphetamine trade and also had information that he was possibly carrying a pistol on his person." The trooper testified that he then activated his lights and made a traffic stop.

After reviewing the motions and the stipulated testimony, the trial court sustained Abeln's motion. The State appeals from that order.

## II.

On appeal, the State contends that the trial court clearly erred in sustaining Abeln's motion to suppress because the trooper had probable cause to believe that Abeln had committed a traffic violation. The State further claims that the totality of the circumstances established that the trooper had a reasonable suspicion to believe that Abeln was involved in criminal activity.

The first fundamental problem with the State's argument on appeal is that, while properly setting out the proper standard of review for this court to follow on appeal, the State wholly disregards that standard of review in making its argument. The State treats all of the trooper's stipulated testimony as though it had been found credible by the trial court. The State then views the evidence and all reasonable inferences drawn therefrom in the light most favorable to itself and disregards all evidence and inferences to the contrary.

■■■ " 'At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.' " *State v. England,* 92 S.W.3d 335, 339 (Mo.App. W.D.2002) (quoting *State v. Weddle,* 18 S.W.3d 389, 391 (Mo. App. E.D.2000)). In ruling on a motion to suppress, "[t]he trial court may choose to

believe or disbelieve all or any part of the testimony presented by the State, *even though it may be uncontradicted,* and may find the State failed to meet its burden of proof." *State v. Talbert,* 873 S.W.2d 321, 325 (Mo.App. S.D.1994) (emphasis added).

In reviewing the trial court's decision to grant a motion to suppress, we view the evidence presented and all reasonable inferences drawn therefrom in the light most favorable to the trial court's order and disregard all evidence and inferences to the contrary. *State v. Hoyt,* 75 S.W.3d 879, 882 (Mo.App. W.D.2002). Even where the trial court's decision was based solely " 'on the records,' we defer to the trial court as the finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence." *Reece v. Director of Revenue,* 61 S.W.3d 288, 291 (Mo.App. E.D.2001). We defer to the trial court's factual findings, and the only issue that we review *de novo* where the trial court has ruled on a motion to suppress is whether the Fourth Amendment was violated as a matter of law under the historical facts found by the trial court. *State v. Schmutz,* 100 S.W.3d 876, 878 (Mo.App. S.D.2003). "If the ruling is plausible, in light of the record viewed in its entirety, an appellate court will not reverse, even if convinced that it would have weighed the evidence differently." *State v. Haldiman,* 106 S.W.3d 529, 533 (Mo.App. W.D.2003) (citing *State v. Milliorn,* 794 S.W.2d 181, 184 (Mo. banc 1990)).

Where, as here, "the parties have not requested findings of fact or conclusions of law and none are entered, the trial court is presumed to have made findings in accordance with the decree entered," and "[t]he judgment will be affirmed under any reasonable theory supported by the evidence." *State v. Kampschroeder,* 985 S.W.2d 396, 398 (Mo.App. E.D.1999). Thus, we must view the evidence submitted to determine whether it would support any set of factual findings under which the trial court could have found that the State failed to meet its burden of proving that the stop was proper.

### III.

On the record in this case, the trial court could reasonably have found that Trooper Wilhoit did not observe any driving behavior that would warrant stopping Respondent's vehicle to issue a citation or a warning. First, in light of Trooper Wilhoit's overall testimony, it cannot be said that it would be unreasonable for the trial court to be skeptical about the witness' credibility. The stipulation is succinct, cursory and without the explanation that trial testimony might provide. The trooper's stipulation relates that he observed a gray over burgundy Ford pickup traveling west on U.S. Route 36 "east of Bevier" while he was traveling east and that he was able to observe that the driver was wearing a "tan colored Carhart style coat." U.S. Route 36 west of Macon and east of Bevier is a four lane, divided highway, and the speed limit is 65 miles per hour.[3] To find any justification for the stop, the trial court would have had to believe: (1) that Trooper Wilhoit, while traveling east at highway speed on a four lane, divided highway, was able to look out his window, across the median, and identify Abeln's pickup truck traveling west at

---

**3.** This court and the trial court may take judicial notice of geographical facts, including Missouri's official highway map. *Siehndel v. Russell–Fischer,* 114 S.W.3d 449, 450 n. 1 (Mo.App. W.D.2003) (citing *State v. Hammons,* 964 S.W.2d 509, 514 (Mo.App. W.D. 1998)).

highway speed and also observe that Abeln was wearing a "tan colored Carhart style jacket"; (2) that later Trooper Wilhoit, while traveling west on a two lane undivided highway, with a vehicle between him and Abeln's pickup, was able to see the **passenger side tires** of Abeln's truck travel over the fog line[4] twice; and (3) that Trooper Wilhoit, while traveling west on a two lane undivided highway, with a vehicle between him and Abeln's pickup, was able to see Abeln making "several furtive motions for the passenger side of the truck,"[5] and from that testimony infer that Abeln was being stealthy, doing something wrong, or that there was something sinister afoot. While all of this may have been possible, and may all be true, it would not be unreasonable for a fact finder to conclude that (1) it would be impossible to identify a "tan colored Carhart style jack-

et" on Abeln under the circumstances described by the officer; (2) it would be impossible for the driver of a car on a two lane road that is following another vehicle to observe the **"passenger side tires"** of a pickup in front of the intervening vehicle travel across the fog line; and (3) that it is highly unlikely that the officer could even see what the driver of the pickup was doing, but assuming he could, there was nothing sinister or stealthy about Abeln's motions toward the passenger side.[6]

In ruling on a motion to suppress, "[t]he trial court may choose to believe or disbelieve all or any part of the testimony presented by the State, *even though it may be uncontradicted,* and may find the State failed to meet its burden of proof." *Talbert,* 873 S.W.2d at 325 (emphasis added). The fact that the testimony of the State's witness was submitted

---

4. The "fog line" is "the white line that demarcates the shoulder from the road." *Riche v. Director of Revenue,* 987 S.W.2d 331, 333 (Mo. banc 1999).

5. "Furtive gestures," "furtive motions," and the like are phrases frequently used by law enforcement officers in trial testimony that are apparently intended to attribute some sinister motive or conduct to virtually any motion or movement that is not entirely visible to the officer. "Furtive" is defined as "done by stealth: secret, surreptitious." *Webster's Third New International Dictionary* 924 (1993). It is a word seldom used in general conversation but often seen in case law and no doubt even more frequently in trial court testimony. *See State v. McFall,* 991 S.W.2d 671 (Mo.App. W.D.1999) (Police waited more than five minutes after pulling car over to exit police car and referred to defendant's movements during that interim as "furtive gestures."); *State v. Primers,* 971 S.W.2d 922 (Mo.App. W.D.1998) (Officers attribute struggle between one officer and vehicle passenger to "a furtive motion."); *State v. Stillman,* 938 S.W.2d 287 (Mo.App. W.D.1997) (Court describes as "furtive action" defendant's "moving his right arm and hand up and down between the front seats" of vehicle.); *State v. Bennett,* 907 S.W.2d 374 (Mo.App. E.D.1995) (Officer testified that defendant made a "fur-

tive movement."); *State v. Dreiling,* 830 S.W.2d 521 (Mo.App. W.D.1992) (Court describes officer's observation of defendant lowering his back pack and throwing something as "furtive steps."). Since the phrase is so often and so loosely used, it is incumbent on trial judges to evaluate whether the underlying actions testified to suggest conduct or activity that is stealthy or surreptitious, or whether the phrase is being used in an attempt to attribute something sinister to otherwise innocent or unsuspicious conduct. In doing so, they are of necessity evaluating the credibility of the witness giving the testimony. In this case, the distinguished trial judge no doubt did so, taking account of the plausibility of the officer's observations in light of the overall credibility of all the evidence in the case, the officer's point of observation, the intervening vehicle, speed and the like.

6. Indeed, nothing in the record indicates that Respondent was aware that the trooper was behind him when he was reaching toward the glove box, and if the trooper was able to clearly observe Respondent's motions from his vantage point two cars back from Respondent, Respondent's motions cannot have been very stealthy or surreptitious.

to the trial court in written form does not strip the trial court of its discretion to disbelieve the submitted testimony and does not result in our review of the trial court's decision being *de novo*. "A stipulation as to the testimony an absent witness would give if present ... is not necessarily binding upon the trier of facts, thus leaving it free to consider the weight and credibility of such evidence the same as any other evidence[.]" *Howard v. Missouri State Bd. of Educ.*, 847 S.W.2d 187, 191 (Mo.App. S.D.1993). Thus, a trial court may properly assess the credibility of stipulated testimony and assign whatever weight it chooses to that evidence in reaching its decision.

Similarly, since this court must review the evidence in the light most favorable to the trial court's decision and affirm even if this court would have weighed the evidence differently, we cannot wholly disregard the trial court's credibility determinations and the weight it assigns to the evidence in determining whether the judgment is supported by the evidence. It would be abjectly absurd for a trial court's decision to be found unsupported by the evidence and "clearly erroneous" based upon an appellate court's decision to weigh the evidence differently than the trial court where the evidence could support more than one conclusion and the trial court has acted within its authority to assess credibility and weigh the evidence.

For the foregoing reasons, we cannot say that the trial court was clearly erroneous based on its evaluation of the weight and credibility of the State's evidence. As noted previously, where "the parties have not requested findings of fact or conclusions of law and none are entered, the trial court is presumed to have made findings in accordance with the decree entered," and "[t]he judgment will be affirmed under any reasonable theory supported by the evidence." *Kampschroeder*, 985 S.W.2d at 398. Consequently, the trial court could reasonably have found that the State failed to meet its burden of proving that the stop of Respondent's vehicle was proper, and for that reason alone, the trial court's judgment must be affirmed.[7]

---

7. This is not to say that this is only reasonable theory under which we would be required to affirm the trial court's judgment. Even if the trooper's testimony were deemed credible, we are still required to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's ruling and to disregard inferences to the contrary. *Brizendine v. Conrad*, 71 S.W.3d 587, 590 (Mo. banc 2002).

The trial court could reasonably have found that the State failed to prove by a preponderance of the evidence that a traffic stop was warranted to issue a citation or a warning for careless and imprudent driving, or any other traffic violation, in light of the ambiguity in the trooper's testimony as to how far onto or beyond the fog line Respondent's tires went or how long they remained there, and the fact that the officer did not initiate a stop immediately after observing this conduct, did not view it as "particularly dangerous," and did not issue a citation or warning to Respondent for this conduct. *See State v. Mendoza*, 75 S.W.3d 842, 845–46 (Mo.App. S.D.2002) (reversing the trial court's denial of a motion to suppress where the arresting officer testified that he saw the vehicle traveling in the passing lane without passing anyone and "driving onto the yellow line of the left shoulder" (the "fog line") and claimed to have stopped the vehicle for violating § 304.015.6 which provides that a vehicle should be driven in the right-hand lane "except when overtaking and passing another vehicle or when preparing to make a proper left turn" because the driver's actions were not proscribed by statute and did not justify the issuance of a warning).

Moreover, there is extensive case law from numerous jurisdictions holding that slightly crossing over the fog line once or twice for a moment does not, in and of itself, justify a traffic stop. *See Rowe v. State*, 363 Md. 424, 769 A.2d 879, 883–89 (2001); *Crooks v. State*, 710 So.2d 1041, 1042–43 (Fla.Dist.Ct.App. 1998); *State v. Lafferty*, 291 Mont. 157, 967 P.2d 363, 365–66 (1998); *Brown v. State*, 188 Ga.App. 184, 372 S.E.2d 514, 515–16 (1988);

## IV.

Similarly, even if the testimony offered by the trooper was accepted as credible, again something the trial court was not required to do, the State's secondary contention, that the trial court was clearly erroneous in its determination that Trooper Wilhoit lacked reasonable suspicion that Respondent was involved in a criminal activity, also fails. Under *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), a law enforcement officer may briefly stop or detain an individual or a moving vehicle to investigate when the officer has a reasonable suspicion supported by specific and articulable facts that criminal activity is afoot. *State v. Martin*, 79 S.W.3d 912, 916 (Mo.App. E.D.

2002); *see also State v. Wells*, 33 S.W.3d 202, 206–07 (Mo.App. S.D.2000) ("*Terry* stands for the proposition that an investigative detention, while a seizure, is authorized where specific and articulable facts and rational inferences from those facts give rise to a reasonable suspicion that a person has committed or is committing a crime."). "Reasonable suspicion is determined by looking at the totality of the circumstances to determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a 'reasonable suspicion' of criminal activity." *State v. Berry*, 54 S.W.3d 668, 673 (Mo.App. E.D.2001).

At the time the stop was initiated, Trooper Wilhoit had been told that an

---

*State v. Tarvin*, 972 S.W.2d 910, 911–12 (Tex. App.1998); *U.S. v. Armstrong*, No. 3:01–CR–141–D, 2001 U.S. Dist. LEXIS 13983 (N.D.Tex. Aug. 30, 2001); *Arizona v. Livingston*, 206 Ariz. 145, 75 P.3d 1103, 1105–06 (Ct.App.2003); *State v. Cerny*, 28 S.W.3d 796, 799–801 (Tex.App.2000); *U.S. v. Gregory*, 79 F.3d 973, 977–79 (10th Cir.1996).

In this regard, we note that the dissent cites to cases from other jurisdictions in an effort to support its claim that evidence that a vehicle crossed over the fog line and onto the shoulder mandates a finding that the traffic stop was proper. However, in all but one of the cases cited, **the appellate court was reviewing a trial court's denial of a motion to suppress and was viewing the evidence in the light most favorable to the trial court's ruling.** *See U.S. v. Fiala*, 929 F.2d 285, 287 (7th Cir.1991); *U.S. v. Smith*, 80 F.3d 215, 218–19 (7th Cir.1996); *U.S. v. Ozbirn*, 189 F.3d 1194, 1196–97 (10th Cir.1999); *U.S. v. Pulliam*, 265 F.3d 736, 738–39 (8th Cir.2001); *State v. Burris*, 545 N.W.2d 192, 193–94 (N.D.1996); *State v. Anderson*, 134 Idaho 552, 6 P.3d 408, 409–10 (Ct.App.2000); *State v. Arnold*, 779 So.2d 840, 842 (La.Ct.App.2000); *State v. Waters*, 780 So.2d 1053, 1054 (La.2001); *State v. Tijerina*, 61 Wash.App. 626, 811 P.2d 241, 242 (Ct.App.1991).

Moreover, the facts and legal issues involved in the cases cited by the dissent are readily distinguishable from the facts in the case at bar. For instance, the dissent cites to

*U.S. v. Smith*, 80 F.3d 215 (7th Cir.1996), as holding that a vehicle crossing the fog line warrants a traffic stop. That case does nothing of the sort. In *Smith*, the police officer that stopped the defendant's van stated that he did so because the van's windshield was cracked, a violation of Illinois statute, and because he observed the van crossing over the white fog line as it turned onto another road. *Id.* at 218. The court upheld the stop *solely* upon the basis that Illinois law prohibits operating a vehicle when the windshield is in defective condition. *Id.* at 219. Accordingly, *Smith* cannot be read as supporting the dissent's proposition in any way, shape or form.

The dissent's reliance on *U.S. v. Ozbirn*, 189 F.3d 1194 (10th Cir.1999), is likewise misplaced. In *Ozbirn* the officer observed the defendant as his vehicle drifted onto the shoulder twice in less than a quarter of a mile, "under optimal road, weather and traffic conditions," and that, based upon his observations of the defendant's driving, he felt that the driver might be falling asleep or otherwise impaired. *Id.* at 1196, 1198. The *Ozbirn* court agreed with the defendant's proposition that "when an officer merely observes someone drive a vehicle outside the marked lane, he does not automatically have probable cause to stop that person for a traffic violation" but found that, applying the applicable standard of review, the totality of the circumstances in the case was sufficient to support the stop. *Id.* at 1197–99.

individual wearing a tan coat and driving a burgundy pickup truck had been seen picking up a case of starter fluid in an Orscheln store by store employees. The store employees indicated that, after the individual noticed them watching him, he put down the case of starter fluid and took one can of starter fluid to the cashier for purchase. Trooper Wilhoit was also informed that a store employee had indicated that the same individual had purchased funnels and hoses earlier in the week.

After observing Respondent, who was driving a burgundy truck and wearing a coat matching the description provided by the store employees, driving down the highway, Trooper Wilhoit turned his car around to follow Respondent. From a vantage point two cars behind Respondent, the Trooper claims to have seen Respondent moving as if he were putting something into or taking something out of his glove box. While that was going on, the trooper claims to have noticed that the passenger-side wheels of the truck twice traveled over the fog line. After running a check on Respondent's license plate, Trooper Wilhoit heard Respondent's name and generally recalled that he had "recently received information that Jonathon [sic] Abeln was involved in local methamphetamine trade and also had information that he was possibly carrying a pistol on his person."

On this set of facts, even if the trial court were required to accept the trooper's stipulated testimony as true, the trial court cannot be deemed to have clearly erred in finding that the State failed to establish by a preponderance of the evidence that the trooper had a sufficient reasonable suspicion to warrant stopping Respondent's vehicle.

The mere fact that someone matching Respondent's description had picked up a case of starter fluid, put it back down, and decided to purchase one can of starter fluid does not give rise to a reasonable suspicion that the individual is involved in a criminal activity. The additional fact that the individual bought funnels and hoses from the store earlier in the week does not add enough to the scenario to give rise to a reasonable suspicion that the individual has committed or is committing a crime. These items all have legitimate uses for which they might have been purchased. Likewise, the fact that Respondent, whose coat and truck matched the description of the individual who bought those products, reached into his glove box while driving and crossed the fog line twice in the process does not add enough to the equation to give rise to a reasonable suspicion of criminal activity.

We must therefore determine whether the trooper's claim to have received information that Respondent was involved in the local methamphetamine trade adds enough to the totality of the circumstances to establish reasonable suspicion. In the case at bar, the State did not present any evidence indicating where Trooper Wilhoit received his "information that Jonathon [sic] Abeln was involved in [the] local methamphetamine trade." The record does not reflect whether this information came from a known informant or an anonymous tip.

■ Where a police officer has relied on information from an anonymous source to justify a stop, the State must demonstrate that the officer sufficiently corroborated the details of the tip before making the stop. *State v. Miller*, 894 S.W.2d 649, 653 (Mo. banc 1995). Trooper Wilhoit's testimony about this information is wholly devoid of any corroboration.

The State bore the burden of proving the basis for a reasonable suspicion that the driver of the burgundy truck was in-

volved in a criminal activity. *Id.* Viewed in accordance with our standard of review, the totality of the circumstances in this case establish that Trooper Wilhoit was, at most, acting upon a hunch when he stopped Respondent's truck and did not have a reasonable suspicion, supported by articulable facts, that a criminal activity was taking place when he stopped Respondent's truck. The trial court's determination that the State failed to meet its burden of proving that Trooper Wilhoit had a reasonable suspicion that Respondent was involved in a criminal activity at the time of the stop was not clearly erroneous.

## V.

The dissent attempts to avoid applying the proper standard of review by transforming the stipulation as to what Trooper Wilhoit would say if he were present into a stipulation of the facts of the case. *Dis. Op.* at 814–15. But the record before us makes it crystal clear that the parties did not stipulate to the facts of the case, and the trial court did not treat it as a stipulation of facts. The stipulation unequivocally recites:

> COMES NOW DEFENDANT, JONA-THAN B. ABELN, by and through his Court appointed attorney, Frederick P. Tucker, AND COMES ALSO THE STATE OF MISSOURI, by and through special prosecuting attorney Timothy W. Anderson and for purposes of the Motion to Suppress Evidence filed by Defendant *agrees that Trooper Steve Wilhoit would testify as follows:*

(emphasis added).[8] In addition, all of the numbered statements contained in that document contain the "I" pronoun (*i.e.* "I was asked," "I observed," "I drove," "I could see," "I believed") to reflect the point of view of Trooper Wilhoit.

While the dissent claims that Respondent did not contest the truth of the statements made by the trooper, Respondent's "Motion to Suppress" talks about the trooper "allegedly" seeing Respondent do various things. Likewise, Respondent's "Argument to Suppress Evidence" talks about how the trooper "contends" various things. This type of language is indicative that the truth of the trooper's statements was not conceded by Respondent.

Moreover, and perhaps far more telling, the record clearly reflects that the State understood the trooper's testimony to be stipulated testimony and not a stipulation of facts. In the State's notice of appeal, the State notes that "[t]he parties submitted *a stipulated record of the arresting trooper's testimony.*" (emphasis added).

Furthermore, the State recognizes that our standard of review on appeal requires us to view the evidence in this case in the light most favorable to the trial court's ruling and to ascertain whether the trial court's ruling is clearly erroneous. The State concedes that "[i]f the trial court's ruling is plausible in light of the record when viewed in its entirety, an appellate court may not reverse that ruling, even if it is convinced that it would have weighed the evidence differently if it had been sitting as the trier of fact." The State further acknowledges that this court must "defer to the trial court's evaluation of the credibility of the wit-

---

8. While the dissent focuses on the fact that the heading on the stipulated testimony reads, "Stipulated Facts Regarding Vehicle Stop," and claims that this renders the import of the document ambiguous, "a pleading is not judged by its title but by its substance and content." *Farmers State Bank v. Place-Wied-* *erholt Chevrolet–Oldsmobile, Inc.,* 747 S.W.2d 170, 172 (Mo.App. W.D.1988). Nothing in the content of the document reflects that it is anything other than a stipulation as to the testimony that Trooper Wilhoit would offer if he were present.

nesses and the weight of the evidence." If the stipulated testimony were indeed a stipulation of fact, the State would have no reason to set forth this rule in the standard of review. **Indeed, at no point in the State's brief does the State contend that the veracity of the stipulated testimony was stipulated or that the trial court was required to accept the trooper's testimony as true.**

Accordingly, the dissent has improperly characterized the stipulated testimony as a stipulation of fact. As evident from the record, the parties merely stipulated that Trooper Wilhoit would offer certain testimony if he were called to testify at a hearing on the motion.

"A stipulation as to the testimony an absent witness would give if present does not amount to an admission of truth of such testimony." *Howard,* 847 S.W.2d at 191. "A stipulation that a witness, if called, would give testimony of a particular kind or character, or in a particular manner, is not necessarily binding upon the trier of facts, thus leaving it free to consider the weight and credibility of such evidence the same as any other evidence adduced on the trial in the case." *Id.* Thus, the stipulation regarding the testimony that would be offered by Trooper Wilhoit is not a stipulation of facts, and the trial court was not bound to accept any of it as true.

The dissent also improperly attempts to rely on the proposition that "[w]here a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record." *Woodard v. Director of Revenue,* 876 S.W.2d 810, 811 (Mo.App. S.D.1994). While Respondent does paraphrase the trooper's testimony in the statement of facts contained in his appellate brief without editorial comment, Respondent's argu-

ment on appeal repeatedly talks about how "the trooper contends" various things. Such language does not evidence any intent to concede the truth of the matters asserted by the officer. Read in the context of his brief as a whole, it is readily apparent that Respondent was not conceding the truth of the trooper's testimony, and "there is no clear and unqualified admission, as is required for a party's assertion to constitute a judicial admission." *Guyer v. City of Kirkwood,* 38 S.W.3d 412, 415 (Mo. banc 2001); *see also Chilton v. Gorden,* 952 S.W.2d 773, 778 (Mo.App. S.D.1997) ("A judicial admission must be clear and unqualified.").

### VI.

For all of the foregoing reasons, the trial court's order granting Respondent's motion to suppress is affirmed.

ULRICH, J. concurs.

LOWENSTEIN, J. dissents in separate opinion filed.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully dissent and would reverse and remand solely on the issue that the officer had reasonable cause to stop Abeln for a traffic violation.

The only evidence presented to the trial court was contained in a document executed by both sides titled "STIPULATED FACTS REGARDING VEHICLE STOP," and was prefaced by language that the parties agreed "that Trooper Steve Wilhoit would testify as follows . . ." A stipulation as to the testimony of an absent witness would give if he or she were present at trial is not an admission of the truth of the testimony. *Howard v. Mo. State Bd. of Educ.,* 847 S.W.2d 187, 191 (Mo.App.1993). (The full text of the stipulation is found in

the appendix to this dissent.) Particularly important to the decision are paragraphs four through six of the stipulation, which contain the trooper's observations of the Abeln vehicle while he followed; e.g., the furtive motions of Abeln followed by his truck's passenger-side tires twice going over the fog line.

The stipulation, taken by itself, presented a mixed message—the heading indicated it was a stipulation of fact, while the body of the agreement indicated it was merely to represent the Wilhoit testimony, had he been in court.

However, Abeln's own arguments at trial and on appeal seem to indicate that he meant the stipulation to be a stipulation of the facts. In support of his motion to suppress evidence, Abeln filed a written argument, which began:

> The trooper contends that he relied on three separate pieces of information to develop the reasonable suspicion necessary to make the traffic stop. The defendant contends that each piece of information separately, as well as all the pieces united, does not rise to the level of reasonable suspicion.

Abeln's motion merely argues that the facts did not add up to reasonable cause to stop the vehicle; it does not contest the truth of the facts. Indeed, by the language of the court in making the ruling,[1] it was evident the judge believed the stipulation was a joint stipulation of fact. (It would therefore, have been a change of position for Abeln to have, in this court, taken the position that he did not stipulate as to the facts in the Wilhoit statement.)

Furthermore, on appeal, the State reiterated Wilhoit's statements in the fact portion of it's brief, and Abeln, in the facts of his brief, also recounted almost verbatim, the very same Wilhoit statements, and specifically wrote: "While following the truck, the trooper was able to observe the passenger side tires of the truck travel over what is commonly referred to as the fog line on 2 occasions." Briefs filed in appellate proceedings may be acceptable sources of judicial admissions. *Mitchell Eng'g Co., a Div. of CECO Corp. v. Summit Realty Co.*, 647 S.W.2d 130, 142 (Mo. App.1982). Any doubt as to the nature of the stipulation was dispelled by the inclusion, in the Abeln brief, of the trooper's observations, which operate as a judicial admission of the stipulated facts. *Woodard v. Dir. of Revenue*, 876 S.W.2d 810, 811 (Mo.App.1994). "[W]here a statement of fact is asserted as true in both parties' briefs, we may consider the fact as though it appears in the record." *State ex rel. Mo. Hwy. & Transp. Comm'n v. Gillespie*, 86 S.W.3d 459, 462 n. 3 (Mo.App.2002); *State v. Franklin*, 841 S.W.2d 639, 641 (Mo. banc 1992). The Wilhoit testimony contained in the joint stipulation was a stipulation as to the facts, and the testimony was not examined by the trial judge for a credibility determination. Therefore, the only question in front of the court is whether the trial judge drew the proper legal conclusions from the facts as stipulated. *Sheldon v. Board of Trustees*, 779 S.W.2d 553, 554 (Mo. banc 1989).

An investigatory or "traffic stop" is valid under the Fourth Amendment if it is supported by reasonable suspicion that criminal activity is afoot, *State v. West*, 58 S.W.3d 563, 568 (Mo.App.2001). An investigatory stop is also valid if there was probable cause to believe a traffic violation, however, minor, has been committed—even if the stop was a mere pretext for a narcotics search. *Whren v. United States*, 517 U.S. 806, 810, 813, 116 S.Ct.

---

1. The trial court's ruling specifically stated: "Based exclusively upon the stipulated facts submitted, Defendants Motion to Suppress is hereby sustained."

1769, 135 L.Ed.2d 89 (1996); *State v. Scott*, 926 S.W.2d 864, 870–71 (Mo.App.1996) (citing *State v. Mease*, 842 S.W.2d 98, 105–06 (Mo. banc 1992).) *See also* WAYNE R. LA-FAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENTS § 1.4 (3d ed. 1997) ("The effect of *Whren*, then, is that (with certain exceptions ...) the pretext doctrine has disappeared from Fourth Amendment jurisprudence."). "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonplace, nontechnical conceptions that deal with 'the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

"Reasonable suspicion" requires some minimal level of objective justification for making a stop—that is, something more than a hunch, but less than the level of suspicion necessary for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion exists if, based on the totality of the circumstances, there is a particularized and objective basis for suspecting the person stopped of criminal activity. *Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657; *State v. Franklin*, 841 S.W.2d 639, 643 (Mo. banc 1992). The legal determination of whether reasonable suspicion existed is made *de novo*. *State v. Goff*, 129 S.W.3d 857 (Mo. banc 2004). Probable cause means a "fair probability that contraband or evidence of a crime will be found." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Neither reasonable suspicion nor probable cause requires proof of wrongdoing by a preponderance of the evidence. *See United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). And the subjective motive or intent of the officer making the stop is irrelevant in deciding whether there was probable cause or reasonable suspicion. *State v. Shaw*, 81 S.W.3d 75, 79 n. 3 (Mo.App.2002) (citing *Whren*, 517 U.S. at 810, 116 S.Ct. 1769); *State v. West*, 58 S.W.3d 563, 568 (Mo.App. 2001).

Missouri caselaw does not directly say whether a car's driving on the fog line twice in a non-emergency situation justifies a traffic stop. In *Riche v. Director of Revenue, supra*, Riche had been stopped by a police officer after crossing the fog line twice. 987 S.W.2d 331, 333 (Mo. banc 1999). He was arrested after the officer smelled alcohol on his breach and Riche failed field sobriety tests. *Id.* Riche's license was then suspended. *Id.* The trial court had concluded that the officer did not have probable cause to stop Riche, but that he had probable cause to arrest Riche based on the evidence the officer gathered after the stop. *Id.* Riche appealed, claiming that the exclusionary rule rendered the post-stop evidence fruit of the poisonous tree, notwithstanding Section 302.505.1's lack of a probable cause requirement for vehicular stops. *Id.* The Supreme Court disagreed. *Id.* at 336. The Court did not address whether the car's crossing the fog line twice gave the officer probable cause to stop Riche, since the Director never raised the issue on appeal. In any event, the Court held that for purposes of driver's license revocation hearings it is untrue that the initial stop of a motorist must be supported by probable cause. *Id.* Thus, whether there was probable cause to stop Riche was a moot issue, at most, then even any implicit approval of the trial court's conclusion was *dicta*.

In *State v. Mendoza*, Mendoza was pulled over, in part, because her car touched the yellow line to the left of the passing lane. 75 S.W.3d 842, 844 (Mo.App. 2002). Even if the yellow line is functionally identical to the fog line, Mendoza did

not cross the traffic line, so the case is not on point. That Mendoza had not crossed the yellow line was one reason why the Southern District held that the stop was invalid. *Id.* at 846. Also notable is that Mendoza may have driven on to the yellow line "out of prudence" to avoid striking the officer's car, which was parked on the shoulder. *Id.* The Southern District did not opine on whether a car's crossing the yellow line (or the fog line) gives an officer probable cause or reasonable suspicion to make a traffic stop.

On the other hand, many foreign cases have held that a vehicle's crossing the fog line warrants a traffic stop. *United States v. Pulliam,* 265 F.3d 736, 739 (8th Cir. 2001); *United States v. Ozbirn,* 189 F.3d 1194, 1198 (10th Cir.1999) ("[Officer] had probable cause to stop [defendant] after he saw the motor home drift onto the shoulder twice within a quarter mile under optimal road, weather and traffic conditions."); *United States v. Smith,* 80 F.3d 215, 219 (7th Cir.1996); *United States v. Fiala,* 929 F.2d 285, 287 (7th Cir.1991); *State v. Richardson,* 622 N.W.2d 823, 825–26 (Minn. 2001); *State v. Waters,* 780 So.2d 1053, 1056 (La.2001) (per curiam); *State v. Arnold,* 779 So.2d 840, 844 (La.App.2000); *State v. Anderson,* 134 Idaho 552, 6 P.3d 408, 410–11 (App.2000); *State v. Burris,* 545 N.W.2d 192, 193 (N.D.1996); *State v. Tijerina,* 61 Wash.App. 626, 811 P.2d 241, 243 (1991). *But cf. United States v. Gregory,* 79 F.3d 973, 978 (10th Cir.1996).

The Southern District has also noted that "[a] traffic stop may be justified by observation of conduct which may not itself even constitute a traffic violation but merely an *unusual operation.*" *State v. Malaney,* 871 S.W.2d 634, 637 (Mo.App. 1994) (quoting *State v. Bunts,* 867 S.W.2d 277, 280 (Mo.App.1993)) (emphasis added); *See also State v. Peterson,* 964 S.W.2d 854, 856–57 (Mo.App.1998) (finding stop of vehi-

cle valid where factors would authorize a law enforcement officer to warn a motorist). In *Malaney,* the defendant was stopped after the officer observed the vehicle weave toward the centerline, correct, then go back toward the white line, "virtually weaving." 871 S.W.2d at 635. The court found that the erratic movements justified the stop. *Id.* at 637. "Viewed objectively, the movements ... could lead a reasonable officer to believe that the driver was drunk, asleep, or for some reason inattentive." *Id.* at 638.

Here, Abeln crossed the fog line twice and made furtive movements while driving. It is not unreasonable to conclude, as did the court in *Malaney,* that the movements could lead an officer to believe the driver was being inattentive. While inattentiveness may not rise to the level of careless and imprudent driving outlined in the statute, it could justify a stop and a warning by a law enforcement officer.

Based on the traffic violation and the reasonable belief that Abeln was being inattentive while driving, the stop was valid. *See also State v. Haldiman,* 106 S.W.3d 529, 533 (Mo.App.2003) (noting of officer who had pulled over driving of car that had crossed the fog line, "[he] knew he could only ticket Mr. Haldiman for swerving onto the shoulder of the road on the two occasions that he observed him").

Several observations of the reasoning underlying the majority opinion are presented:

1) Even though the State had the burden of proof on the defendant's motion, there is no evidence in the record to support the trial court's judgment. There are no reasonable inferences supporting the result reached. The majority opinion is rife with comments that the trial court could not have believed that the trooper saw what his testimony

said he saw. The trial court never stated it did not believe the trooper, or that the testimony was inherently suspect (i.e., the trooper observed everything from one mile). Abeln never disputes the officer's stipulation; rather, it is the majority that now raises credibility as an issue.

2) In support of why the trial court could have been "skeptical about the witness' credibility," the majority brands the stipulation as "succinct, cursory, and without the explanation that trial testimony might provide." The reader is again invited to read the stipulation located at the end of the dissent, and to wonder what else the trooper could or should have done to fill in any blanks as to a reason to stop the vehicle for erratic driving.

3) The majority boldly attacks the stipulation for the observation the passenger side tires were the ones that twice touched the fog line located on the right side of the Abeln vehicle. What might have appeared more unusual would have been the trooper's observation that all the vehicle's tires went over the line.

4) The majority opinion on page six, and not the trial court nor the defendant, doubts the trooper could have seen Abeln move toward the passenger side. The opinion then indicts the use of the word "furtive" by the officer, as not being used in general parlance, but is really a code word used only by the police. As the opinion notes, a synonym for furtive is "stealth," a word, according to WEBSTER'S was used by Shakespeare, John Milton, and Mark Twain.

Despite all the gyrations of the majority to bolster the result, the evidence here was of an admission at the trial level, and certainly at the appellate level, that Abeln did not attack the sole witness' credibility. That Abeln used the word "contend" in his brief here does nothing to impeach that the officer saw what he said he saw. Nor can the officer's use of the words "I saw," or "I could see," in the stipulation now be interpreted to "merely reflect the point of view of Trooper Wilhoit." The judgment should be reversed and the cause remanded.

### APPENDIX

### STIPULATED FACTS REGARDING VEHICLE STOP

COMES NOW DEFENDANT, JONATHAN B. ABELN, by and through his Court appointed attorney, Frederick P. Tucker, AND COMES ALSO THE STATE OF MISSOURI, by and through special prosecuting attorney Timothy W. Anderson and for purposes of the Motion to Suppress Evidence filed by Defendant agrees that Trooper Steve Wilhoit would testify as follows:

1. On December 12, 2001 at approximately 10:30 a.m., I was asked to contact Troop B Headquarters. I contacted Radio Operator Simpson, who advised me Orscheln Farm and Home had contacted Troop B in regard to a suspicious person in the store. The person had picked up a case of starter fluid, then when he noticed someone was watching him, he put the case down and purchased only one can. The Orscheln employee advised the same individual had been in the store earlier in the week buying funnels and hoses. The individual had then left in a gray over burgundy Ford pickup truck.

2. At approximately 10:42 a.m., while conducting an area canvass for the vehicle, I observed a gray over burgundy Ford pickup traveling west on US36 east of Bevier. I noticed the driver was wearing a tan colored Carhart style coat. Troop B

radio personnel confirmed with the Orscheln employee the individual in the store had been wearing a tan Carhart style coat.

3. At that time I drove through the median and turned around believing that was the vehicle I was supposed to be looking for and I tried to catch up with the truck as best I could. By the time the road turned from 4 lanes to 2 lanes west of Bevier, there was still a vehicle between the truck and me.

4. As I was behind the truck and the car between us I observed the driver of the truck. I could see because this truck is relatively high off the ground so you could see into the cab of the truck. The driver of the truck was making several furtive motions for the passenger side of the truck. It almost looked like he was reaching into or throwing something towards the glove compartment area of the truck.

5. While he was doing this I observed on 2 occasions while I was behind him that the passenger side tires of the truck traveled over what is commonly referred to as the fog line.

6. This was in correlation to what ever motions he was making in the truck. Whatever he was doing was causing him to lose track of what he is doing on the road and causing him to go over to the shoulder. The movements were erratic and careless enough to arouse my suspicion, and were not normal, safe driving. The actions themselves of going off the highway I did not consider particularly dangerous.

7. I passed the vehicle that separated us. After I got behind the truck I called the radio operator and ran a check of the license plate of the truck at which time it came base as registered as Jonathon Abeln of New Cambria.

8. I had recently received information that Jonathon Abeln was involved in local methamphetamine trade and also had information that he was possibly carrying a pistol on his person.

9. I believed from the information I had first of all the call for service from Orscheln, the erratic driving that I had seen, the furtive motions that the driver was making, I believed I had plenty of reason to both stop for the suspicion that had occurred at Orscheln's and from what I had seen of his driving.

10. I activated the lights on my patrol car and made a traffic stop.