JEFFREY W. BATES, J.
*392 This appeal arises from a lawsuit filed by plaintiff Hurricane Deck Holding Company (HDHC) against three defendants: Spanburg Investments, LLC (Spanburg Investments); Daniel Spanburg, the sole member and manager of the company (Spanburg); and his wife, Karen Sellers (Sellers). HDHC's two-count petition alleged that: Spanburg and Sellers fraudulently transferred assets, in violation of Missouri's Uniform Fraudulent Transfer Act (UFTA), §§ 428.005-.059[1] (Count 1); and Spanburg and Sellers used Spanburg Investments as their alter ego to justify piercing the corporate veil (Count 2). The case was tried to the court, and no party requested that the court issue findings of fact. The court found in favor of all defendants on both counts.
On appeal, HDHC presents four points. We need only address the first, which is dispositive of this appeal. In Point 1, HDHC contends the judgment was against the weight of the evidence because "the overwhelming weight of the evidence showed [Spanburg's and Sellers'] actual intent to strip Spanburg Investments of its assets." We disagree because: (1) HDHC had the burden of proving that Spanburg and Sellers had the intent to defraud, which was a necessary element in each count in the petition; (2) HDHC's evidence on that intent element required the court to make a credibility determination; (3) the trial court did not find HDHC's evidence persuasive; and (4) after reviewing the record, we do not have a firm belief that the judgment was wrong.
Factual and Procedural Background
We view the evidence and permissible inferences drawn therefrom in the light most favorable to the judgment. Suffian v. Usher , 19 S.W.3d 130, 136 (Mo. banc 2000). So viewed, the following evidence relevant to this appeal was adduced at trial.
In August 2005, Spanburg Investments acquired four lots from HDHC. The purchase price of $125,000 was fully financed by HDHC, so Spanburg Investments was not required to make any cash investment in the property at the time the transaction closed. HDHC required Spanburg Investments to execute a promissory note (the Note), but neither Spanburg nor Sellers were individually required to sign or personally guarantee the Note. HDHC secured the Note with a deed of trust (Deed of Trust). With respect to payment, HDHC required interest-only payments until January 1, 2010. At that time, the Note matured, and a balloon payment for the entire outstanding balance became due.
In November 2005, Spanburg Investments borrowed $200,000 from the Bank of Versailles, secured by the first lot (Lot 1) of the four lots purchased from HDHC. The purpose of the loan was to procure funds to construct a speculation home on Lot 1 and develop infrastructure common to all four lots. HDHC agreed to subordinate its Deed of Trust to the Bank of Versailles' loan as to Lot 1. Spanburg and Sellers also personally guaranteed the *393 Bank of Versailles' loan. The balance of the loan was not immediately paid out to Spanburg Investments. Instead, Spanburg Investments took draws as needed to pay expenses and wages associated with the speculation home project and the development of the lots.
With respect to the Note, Spanburg Investments made all required interest payments. When the Note matured on January 1, 2010, Spanburg Investments failed to make the balloon payment and defaulted. The Bank of Versailles foreclosed on Lot 1 with the unfinished house. HDHC foreclosed on the remaining lots and sued Spanburg Investments for the remaining deficiency. In November 2012, HDHC obtained a judgment against Spanburg Investments in two separate amounts of $15,000 and $116,512.48. By that time, Spanburg Investments was insolvent.
Thereafter, HDHC filed the underlying action against Spanburg Investments, Spanburg and Sellers (hereinafter referred to collectively as Defendants) alleging a violation of the UFTA and seeking to pierce the corporate veil of Spanburg Investments. A two-day bench trial was conducted. In addition to documentary evidence, several witnesses testified, including Spanburg. Because neither party requested specific findings, the trial court entered a judgment stating that on each count, "the Court finds the issues in favor of Defendants and against Plaintiff." This appeal followed.
Standard of Review
On review of a court-tried case, this Court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Ivie v. Smith , 439 S.W.3d 189, 198-99 (Mo. banc 2014) ; see Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976) ; 84.13(d). To prevail on an against-the-weight-of-the-evidence challenge, a litigant must show that the trial court could not have reasonably found, from the trial record, the presence of a fact necessary to uphold the judgment. Ivie , 439 S.W.3d at 206. In such a challenge, the trial court may believe all, part, or none of the evidence, and we must defer to its factual findings when the issues of fact are contested and when the facts ultimately found depend on credibility determinations. Id ."The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." Id . We presume the trial court's judgment is valid, and it is the appellant's burden to show otherwise. See Williams v. Frymire , 186 S.W.3d 912, 916 (Mo. App. 2006).[2]
In addition, Rule 73.01(c) applies to court-tried cases and requires:
• the trial court, "if requested by a party," to issue written findings on "controverted fact issues specified by the party," and
• appellate courts to view fact issues without specific findings "as having been found in accordance with the result reached" by the trial court.
*394 Black River Elec. Coop. v. People's Cmty. State Bank , 466 S.W.3d 638, 640 (Mo. App. 2015) ; Rule 73.01(c). Because no findings of fact were requested or made, we presume all fact issues were resolved in Defendants' favor. See Black River , 466 S.W.3d at 640. A party who fails to request findings of fact "forfeits that advantage on appellate review, because the trial court's findings are considered as having been found in accordance with the judgment." Pearson v. Koster , 367 S.W.3d 36, 44 n.3 (Mo. banc 2012) ; Black River , 466 S.W.3d at 640.
Discussion and Decision
HDHC's first point challenges the trial court's implicit finding that Spanburg and Sellers did not have the "actual intent to strip Spanburg Investments of its assets." This finding concerning intent is an element common to both counts alleged in HDHC's petition. With respect to Count 1, a fraudulent transfer under the UFTA includes a transfer made by the debtor "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" § 428.024.1(1); see Taylor v. Clark , 140 S.W.3d 242, 251 (Mo. App. 2004) (key element of a fraudulent conveyance is "the conveyance of goods or titles with an intent to hinder, delay, or defraud creditors"). In determining "actual intent[,]" the UFTA permits consideration of the following factors, among others:
(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
§ 428.024.2; Curtis v. James , 459 S.W.3d 471, 475 (Mo. App. 2015). As this non-exhaustive list illustrates, a determination of intent is a highly fact-intensive issue.
With respect to Count 2, a court may pierce the corporate veil or disregard the separate legal entity if this separateness is used as a device to defraud a creditor. Taylor , 140 S.W.3d at 254. The court will disregard the legal entity when the entity is operated while undercapitalized or if its assets are stripped to avoid the demands of creditors. Id . ; Sansone v. Moseley , 912 S.W.2d 666, 669 (Mo. App. 1995). "Whether a conveyance was made with fraudulent intent is a question of fact." Curtis , 459 S.W.3d at 475.
HDHC's first point contends the judgment "was against the weight of the evidence" because the "overwhelming weight of the evidence showed [Spanburg's and Sellers'] actual intent to strip Spanburg Investments of its assets." We find no merit in this contention because HDHC
*395 had the burden of proving the ultimate fact of intent to defraud, and the trial court simply was not persuaded by HDHC's evidence. HDHC's burden of proof had two components: (1) a burden to produce evidence; and (2) the burden to persuade or convince the court as fact-finder to view the facts in HDHC's favor. See Warren v. Dunlap , 532 S.W.3d 725, 729 (Mo. App. 2017). Regarding those components, what we said in Black River bears repeating:
Credible, believable, even uncontradicted proof of evidentiary facts may not prove a contested issue of ultimate fact to the fact-finder's satisfaction. A party with the burden of proof cannot merely offer a submissible case; it must convince the fact-finder to view the facts favorably to that party. This is because evidence never proves any element until the fact-finder says it does.
Black River , 466 S.W.3d at 640 (emphasis in original; internal citations, quotations and brackets omitted). Further, "[w]hen the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence." White v. Dir. of Revenue , 321 S.W.3d 298, 305 (Mo. banc 2010). "If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." Id . Generally, the party who does not have the burden of proof on an issue need not offer any evidence concerning it. Id .
HDHC's argument ignores both the fact that it had the burden of proof (i.e., Defendants were not required to prove any fact in order for the trial court to rule in their favor) and our standard of review. Because all the ultimate factual issues were contested, we must defer to the trial court's credibility determinations and its prerogative to believe all, part, or none of the evidence offered to prove those facts. Ivie , 439 S.W.3d at 206. In addition, because findings of fact were not requested in this case, we consider all fact issues upon which no specific findings were made as having been found in accordance with the result reached per Rule 73.01(c). Id . ; Ivie , 439 S.W.3d at 206. Thus, under our mandated standard of review, we must presume the trial court implicitly decided not to credit the documentary evidence and testimony upon which HDHC relies, and HDHC presented no evidence immune from such a credibility determination. See Ivie , 439 S.W.3d at 206. As a result, HDHC's argument fails because it rests only upon evidence that we must assume the trial court did not credit. See, e.g. , Morris Branson Theatre, LLC v. Cindy Lee, LLC , 521 S.W.3d 278, 283 (Mo. App. 2017) (denying a point that the judgment was against the weight of the evidence because the issues of fact were contested, and the trial court could disbelieve the plaintiff's evidence); Walker v. Walker , 485 S.W.3d 403, 408-09 (Mo. App. 2016) (same holding). Because we are not firmly convinced the trial court's judgment was wrong, Point 1 is denied. As HDHC failed to prove the intent to defraud by Spanburg and Sellers-an element common to its UFTA count and its count to pierce the corporate veil-we need not address HDHC's other three points.[3]
The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCUR
WILLIAM W. FRANCIS, JR., J.-CONCUR

All statutory references are to RSMo (2000). All rule references are to Missouri Court Rules (2017).

HDHC bore the burden of proof in this action. In order to prevail on an against-the-weight challenge, HDHC must cause us to firmly believe that the trial court's implicit factual findings against HDHC as to each element of each count in the petition was wrong, based upon evidence which was not subject to a credibility determination by the trial court. See, e.g. , Warren v. Dunlap , 532 S.W.3d 725, 729 (Mo. App. 2017) ; Morris Branson Theatre, LLC v. Cindy Lee, LLC , 521 S.W.3d 278, 283 (Mo. App. 2017) ; Walker v. Walker , 485 S.W.3d 403, 408-09 (Mo. App. 2016).

Points 2-4 involve HDHC's claim to pierce the corporate veil and contend that the judgment "was against the weight of the evidence" because the evidence showed: "Spanburg Investments had no separate mind, will or existence of its own" (Point 2); Spanburg and Sellers "used their control of Spanburg Investments to make fraudulent transfers and to breach Spanburg Investments' duty to HDHC" (Point 3); and "HDHC's injury was proximately caused by [Spanburg's and Sellers'] conduct" (Point 4).