

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MICHAEL GRABB,                    )
)
                    Appellant,    )
)
v.                           )
)
TERESA LURINDA GRABB    )    **WD86056**
a/k/a TERRY GRABB        )    **(Consolidated with WD86257)**
)
and                    )    **OPINION FILED:**
)    **April 23, 2024**
AMANDA HUFFMAN, PUBLIC    )
ADMINISTRATOR FOR        )
MORGAN COUNTY, MISSOURI,    )
Personal Representative of the    )
Estate of Ronald E. Grabb,    )
)
                    Respondents.    )

**Appeal from the Circuit Court of Morgan County, Missouri**
**The Honorable J. Stephen Grantham, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and W. Douglas Thomson, Judges

Appellant Michael Grabb ("Son") appeals from the judgment entered by the

Circuit Court of Morgan County, Missouri ("trial court"), awarding Teresa Grabb

("Ex-Wife") the IRA proceeds of Ronald Grabb ("Decedent") as her non-probate

property upon Decedent's death.  Because there is substantial evidence supporting the trial court's judgment, we affirm.

## Factual and Procedural Background

Son is the biological son and only child of Decedent.  In 1990, when Son was nine years old, Decedent married Ex-Wife.  The property forming the basis of this appeal is a traditional individual retirement account opened by Decedent with TD Ameritrade in November 2011 ("the TD IRA").  Decedent listed Ex-Wife as his primary beneficiary, entitling her to 100% of the TD IRA proceeds on Decedent's death.  Decedent listed Son as his contingent beneficiary.

The TD IRA application, which bears Decedent's signature, states, "[t]his Designation of Beneficiary will remain in full force and effect until such time as the Custodian is in actual receipt of a written revocation or change of beneficiary signed by me and in such form and substance as the Custodian deems necessary."  Decedent further agreed his IRA was subject to a "Client Agreement" and a custodial agreement titled "the TD Ameritrade Clearing, Inc. (Custodian) Prototype Individual Retirement Plan and Custodial Agreement."  Both agreements were incorporated into the TD IRA by reference.  Barber Financial Group ("Barber Financial") was named as the investment group overseeing the TD IRA proceeds.

Two years after Decedent opened the TD IRA, Decedent and Ex-Wife entered into a legal separation agreement ("Separation Agreement").  As part of the Separation Agreement, Ex-Wife agreed to transfer all of her "right, title and interest" in various property items to Decedent, including the entirety of the TD IRA.

2

In November 2019, the Separation Agreement was converted to a Judgment and Decree of Dissolution of Marriage ("Dissolution Decree"). The Dissolution Decree ordered that Ex-Wife and Decedent comply with the terms of the Separation Agreement, which was fully incorporated into the Dissolution Decree. Decedent, however, never changed the TD IRA beneficiary designations (primary or contingent) following entry of the Dissolution Decree.

Decedent passed away on December 1, 2020. Thereafter, Barber Financial informed Ex-Wife she was the beneficiary and distributed the proceeds to her.

Between June and October of 2022, Son filed numerous claims against Ex-Wife and asserted claims to Decedent's probate estate and non-probate assets in various circuit courts; but, ultimately, the operative proceeding relevant to this appeal is Son's Second Amended Verified Petition ("Petition"), filed October 6, 2022. The Petition asserted claims against Ex-Wife including, among other things, that Ex-Wife's TD IRA beneficiary designation was automatically revoked upon divorce under subsection 1 of section 461.051[1] which provides:

> If, after an owner makes a beneficiary designation, the owner's marriage is dissolved or annulled, any provision of the beneficiary designation in favor of the owner's former spouse or a relative of the owner's former spouse is revoked on the date the marriage is dissolved or annulled, whether or not the beneficiary designation refers to marital status. The beneficiary designation shall be given effect as if the former spouse or relative of the former spouse had disclaimed the revoked provision.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

Ex-Wife responded in her Answer that her designation was not voided because auto-revocation was excepted under subsection 2 of section 461.051, which states:

> ***Subsection 1 of this section does not apply to a provision of a beneficiary designation*** that has been made irrevocable, or revocable only with the spouse's consent, or that is made after the marriage was dissolved, or ***that expressly states that marriage dissolution shall not affect the designation of a spouse or relative of a spouse as beneficiary***.

(Emphasis added.)

On January 3, 2023, the case proceeded to a one-day bench trial. Multiple witnesses testified that Decedent and Son's relationship became strained in 2012 with Son admitting he had not seen or spoken to Decedent since 2013. When a childhood friend of Decedent was asked if he knew whether Decedent wanted Son to receive the IRA proceeds, the childhood friend responded: "I know he did not." Ex-Wife, although she maintained a good relationship with Son after her separation and divorce from Decedent, also testified that Decedent did not want Son to receive anything from Decedent upon Decedent's death. Son did not present any contrary evidence on this point.

By contrast, uncontroverted trial testimony supported that Ex-Wife maintained an amicable relationship with Decedent during their divorce and beyond, with the two usually communicating amicably with one another every day. Ex-Wife also testified that Decedent took great care with his financial matters, keeping all his TD IRA statements in binders and meeting with financial advisors regularly.

During the trial, Son stipulated to the admission of several of Ex-Wife's exhibits. One of the stipulated exhibits was a "Disclosure Statement and Individual Retirement

4

Custodial Account Agreement" ("Exhibit 102") produced by Barber Financial in discovery alongside a copy of Decedent's TD IRA application. Exhibit 102 states at section 8.07:

> **Beneficiaries** – If you die before you receive all of the amounts in your IRA, payments from your IRA will be made to your beneficiaries . . .
>
> **Changes in the relationship between you and any designated beneficiary** (e.g., marriage, **divorce**, or adoption) **will not automatically add or revoke beneficiary designations**. For example, **if you designated spouse as beneficiary and you were subsequently divorced, your former spouse will remain beneficiary on the Account unless you submit a new beneficiary designation to us**.

(Emphasis added.) When Ex-Wife's counsel began questioning Ex-Wife about Exhibit 102, Son's counsel explained that, while Son had stipulated to the admission of Exhibit 102, he did not believe it was relevant. And, he asserted a foundation objection to Ex-Wife testifying about Exhibit 102 during her direct examination. Specifically, the following exchange occurred during her examination:

> **[SON'S COUNSEL]**: What—pardon me. I'm going to object to foundation. I—I don't think these two are tied together, and I don't think there's any foundation to tie both—[Beneficiary Application] and [Exhibit 102]. And I don't believe the witness has any foundation in which to give that testimony.
>
> **[EX-WIFE'S COUNSEL]**: Your Honor, we stipulated to the admissibility of [Exhibit 102]. So I can use this document; it has been admitted by this Court. So I certainly can use this document and discuss its contents. Now, if what he's saying is I can't use this witness, well, it's admitted at this point, so I can use it during argument. But I—I don't see why I can't talk with her about this document.
>
> **[TRIAL COURT]**: Well, here's what I would say. I mean, technically, I think that's true. What does she know about a document that's—the [trial court] can certainly take a look at it. I have read both your briefs. I understand what your arguments are.

5

. . . .

**[TRIAL COURT]**:  So I'm going to sustain it; I think that's correct.

**[EX-WIFE'S COUNSEL]**:  Okay.

**[TRIAL COURT]**:  It's in.

. . . .

**[TRIAL COURT]**:  The Court will review all.

. . . .

**[TRIAL COURT]**:  Every document that's in.  And I'm the one that's got to decide this anyway, so that's fine.

At the conclusion of all evidence, the trial court took the matter under advisement.

The trial court issued its Judgment (the "Judgment") on January 18, 2023.  The Judgment

did not make findings of fact or conclusions of law—as neither party requested them.

Instead, the Judgment made the following summary determinations:

1.  The IRA proceeds are the property of Ex-Wife, not Son or the Estate.

2.  Son failed to prove by clear or convincing evidence that Ex-Wife intentionally harmed Son without just cause, or that Ex-Wife acted with deliberate disregard for Son's safety under either count of the [Petition].

3.  Son failed to present sufficient evidence that Ex-Wife converted the TD IRA proceeds because the TD IRA proceeds were determined to be her property.

4.  Son is not entitled to attorney's fees or punitive damages.

Son appeals, asserting one point on appeal—a sufficiency-of-the-evidence challenge

to the Judgment.

### Standard of Review

On appeal from a bench-tried case, "we affirm the judgment of the trial court

unless it misapplied or erroneously declared the law, or the judgment is not supported by

substantial evidence, or the judgment is against the weight of the evidence." *Carmack v. Carmack*, 603 S.W.3d 900, 905 (Mo. App. W.D. 2020) (internal quotation marks omitted). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *McElvain v. Stokes*, 623 S.W.3d 769, 773 (Mo. App. W.D. 2021) (internal quotation marks omitted). "We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010).

Of additional significance to this bench-tried proceeding is that Son did not request findings of fact or conclusions of law pursuant to Rule 73.01. "A party who fails to request findings of fact forfeits that advantage on appellate review, because the trial court's findings are considered as having been found in accordance with the judgment." *Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 394 (Mo. App. S.D. 2018) (internal quotation marks omitted) (quoting *Pearson v. Koster*, 367 S.W.3d 36, 44 n.3 (Mo. banc 2012)). "Because no findings of fact were requested or made, we presume all fact issues were resolved in [Ex-Wife's] favor." *Id.*

A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:

> (1) identify a challenged factual proposition necessary to sustain the judgment;

> (2) identify all of the favorable evidence supporting that position; and

(3) demonstrate why that supporting evidence, when considered with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*McElvain*, 623 S.W.3d at 773 (internal quotation marks omitted).

**Analysis**

In his single point on appeal, Son argues, as he did below, that Missouri law automatically revoked Wife's beneficiary designation upon entry of the 2019 Dissolution Decree and that there is no substantial evidence in the record to defeat automatic statutory revocation.

In his appellate briefing to this Court, Son identifies evidence he believes is favorable to the trial court's determination that the TD IRA proceeds belong to Ex-Wife:

1. Decedent listed Ex-Wife as his primary death beneficiary on the TD IRA Application;

2. The TD IRA application contained an agreement section to which Decedent was agreeing by signing, that stated it incorporated by reference "the TD Ameritrade Clearing, Inc. (Custodian) Prototype Individual Retirement Plan and Custodial Agreement";

3. The agreement section further stated:

   I understand this Designation of Beneficiary will be effective on the date received by the Custodian. This Designation of Beneficiary will remain in full force and effect until such time as the Custodian is in actual receipt of a written revocation or change of beneficiary signed by me and in such form and substance as the Custodian deems necessary. If I change the beneficiaries, all previously designated beneficiaries no longer have the right to receive benefits under this Agreement;

4. The TD IRA application also stated that Decedent was bound by a "Client Agreement" that was incorporated by reference and subject to amendment from "time to time."

Son asserts this "sole favorable evidence" cannot overcome automatic revocation under section 461.051.

However, as noted earlier, subsection 2 of section 461.051 states that subsection 1 "does not apply to a provision of a beneficiary designation that" (1) is irrevocable; (2) is revocable only with the spouse's consent or made after divorce; or *(3) expressly states divorce will not affect the spousal designation*.  § 461.051.2.

Here, Son's accounting of favorable evidence conveniently ignores section 8.07 of Exhibit 102, which contains just such a provision expressly stating that divorce does <u>not</u> affect spousal beneficiary designation:

> **Changes in the relationship between you and any designated beneficiary** (e.g., marriage, **divorce**, or adoption) **will not automatically add or revoke beneficiary designations**.  For example, **if you designated spouse as beneficiary and you were subsequently divorced, your former spouse will remain beneficiary on the Account unless you submit a new beneficiary designation to us.**

(Emphasis added.)

Son argues the trial court could not draw any factual inferences from Exhibit 102 relating to the beneficiary designations because Son's stipulation to the admittance of Exhibit 102 merely avoided "the necessity of a business records affidavit or witness under § 90.692."  To the contrary, the record does *not* reflect that Son limited his stipulation to the admissibility of Exhibit 102 in any fashion.  Son merely stipulated to the *admissibility* of Exhibit 102 with no further explanation.  Thus, we disagree that the trial court was not entitled to draw inferences from the contents of Exhibit 102 as it bore upon the issue of Decedent's IRA beneficiary designations.

"If a party fails to object to opposed evidence at the earliest opportunity, any objection is waived." *Mullenix-St. Charles Props., L.P. v. City of St. Charles*, 983 S.W.2d 550, 557 (Mo. App. E.D. 1998). Further, where "evidence of one of the issues in the case is admitted without objection . . . it may be properly considered even if the evidence would be excluded by a proper objection." *Sellenriek v. Dir. of Revenue*, 826 S.W.2d 338, 339 (Mo. banc 1992).[2]

Exhibit 102 is evidence of *the principal issue* presented in this case—whether Ex-Wife was entitled to the TD IRA proceeds—and *Son agreed to its admission*. Though Son raised a foundation objection, which was sustained as to Ex-Wife's personal knowledge of whether the terms of Exhibit 102 governed the TD IRA, that did *not* foreclose the trial court from *considering* the document and determining that it was probative on the question presented. And, the trial court made clear that it was the province of the trial court to determine the relevance of all admitted evidence during the bench trial. Directly after sustaining the *foundation* objection, the trial court stated, "The Court will review all . . . [e]very document that's in. And I'm the one that's got to decide this anyway, so that's fine." Son once again failed to raise a relevance objection or

---

[2] Son cites *Howard v. Mo. State Bd. of Educ.*, 847 S.W.2d 187, 191 (Mo. App. S.D. 1993) for the proposition that merely stipulating to the admission of evidence does not make it probative. We agree with this general proposition, but nothing in *Howard* prohibits a trier of fact from *considering* whether stipulated evidence is probative. In fact, *Howard* makes clear it is the providence of the trier of fact "to consider the weight and credibility of [stipulated] evidence." 847 S.W.2d at 190-91. Moreover, *Howard* was not examining stipulation of a *document*, but rather discussed the parameters of stipulated *testimony*. *Id*. at 191-92.

further comment on the trial court's statement that the content of Exhibit 102 would be reviewed in making its decision.

Son contends that even if the trial court could consider Exhibit 102, "Exhibit 102 [is] just a naked document with no evidence linking it to . . . Decedent's [TD IRA application], or to Decedent's actual IRA in any way." We disagree. First, the TD IRA application contains language stating that the TD IRA was established "under the TD Ameritrade Clearing, Inc. Prototype Individual Plan and Custodial Agreement, which is incorporated by reference." Second, Exhibit 102 bears the TD Ameritrade logo and is titled "Disclosure Statement and Individual Retirement Custodial Account Agreement"— leading to the logical conclusion that Exhibit 102 *is* a TD Ameritrade Individual Custodial Account Agreement. Third, as already discussed, Son stipulated to Exhibit 102 as an admissible document *that by its plain terms excepted auto-revocation on divorce*. Fourth, Barber Financial produced the TD IRA application and Exhibit 102 *together* in discovery with successive pagination and Bates stamps. Clearly, then, Barber Financial understood these documents to be inter-related, for it would have been illogical to produce the documents *together* if Barber Financial believed that the documents bore no relevance to one another.

Further, uncontroverted testimony indicates Decedent did not want Son to receive any property from Decedent and that Decedent remained on good terms with Ex-Wife. Uncontroverted testimony also indicates Decedent took great care in planning his finances—including ensuring his IRA proceeds went to the proper beneficiary. While Decedent's intent has no relevance for determining whether section 461.051's automatic

11

revocation applies,[3] Decedent's presumed knowledge of Exhibit 102 combined with his express determination *not* to make changes to his beneficiary designations post-divorce is circumstantial evidence Decedent was aware that his beneficiary designation leaving the TD IRA proceeds to Ex-Wife would be unaffected by the divorce. According to Ex-Wife, Decedent regularly met with an advisor and "was very aware of who would receive his money."

And, Decedent's decisions regarding the form of his TD IRA beneficiary designations *after* his divorce are relevant to the terms of the Dissolution Decree. For, the Dissolution Decree did not extinguish Ex-Wife's right to receive proceeds under the TD IRA upon Decedent's death *should Decedent choose to designate Ex-Wife as the beneficiary of the IRA*. Instead, the terms of the Dissolution Decree merely confirmed that the IRA would be considered Ex-Husband's separate property after the dissolution and that Ex-Wife was forfeiting any right to the IRA as *marital property*. This served to vest total control of the IRA in Decedent, *including the decision on who should be his death beneficiary*. While the Separation Agreement incorporated into the Dissolution Decree does serve to release any claim by Ex-Wife to inheritance in Decedent's *probate estate*, it does not limit her ability to receive proceeds from Decedent through a *non-probate transfer*—the type of transfer governed by section 461.051. *Elliott v. St. John's*

---

[3] By its terms, section 461.051 operates when triggered (i.e., on divorce absent exception)—without regard to the intentions of the decedent. *See Gillespie v. Est. of McPherson*, 159 S.W.3d 466, 471-72 (Mo. App. E.D. 2005) (declining to "look to the intent of the parties to determine whether the divorce affected Decedent's designation of second wife as the beneficiary under the insurance policy" when section 461.051 was triggered).

*Reg'l Health Ctr.*, 243 S.W.3d 501, 503 (Mo. App. S.D. 2008) ("Section 461.051 governs the effect that a dissolution of a marriage has on non-probate transfers to former spouses.").

The trial court's conclusion that the proceeds of the TD IRA belong to Ex-Wife as the primary beneficiary of such proceeds upon Decedent's death is supported by substantial evidence.

Son's point on appeal is denied.

### Conclusion

The trial court's Judgment is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and W. Douglas Thomson, Judges, concur.