

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| J.A.W., | ) | No. ED112273 |
| | ) | |
| Appellant, | ) | Appeal from Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | 23JE-PN00782 |
| | ) | |
| V.W., | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Respondent. | ) | Filed: November 26, 2024 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

## OPINION

This appeal arises from the denial of a petition for a full order of protection filed by

J.A.W. (Mother) on behalf of her six-year-old son, T.H.W. (Child), pursuant to the Child

Protection Orders Act, sections 455.500 – 455.538.[1] Mother filed the petition after she found

two abrasions and two bruises on Child's body following an afternoon Child spent with V.W.,

Child's paternal grandfather, and M.W., Child's father. Grandfather claimed they were playing a

game inspired by the television program *Game of Thrones* which they had watched that day.

Grandfather further claimed they were merely roughhousing and denied that he intentionally

caused the bruises. The trial court denied Mother's petition to convert the ex parte order into a

full order of protection upon its finding that Mother failed to prove by a preponderance of the

---

[1] All statutory references are to the Revised Statutes of Missouri (2016).

evidence that Grandfather committed a battery on Child, which would satisfy the definition of domestic violence under the Act, or that he sexually assaulted Child.

In this appeal, Mother claims that the trial court's findings (1) that Grandfather did not commit sexual assault against Child and (2) that Grandfather did not engage in domestic violence by committing a battery against Child are against the weight of the evidence. While we reject Mother's arguments with respect to sexual assault, we agree with her that the trial court's finding that Grandfather did not commit a battery on Child is against the weight of the evidence.

It is undisputed that Grandfather caused the injuries by biting and sucking on Child. The issue is whether Grandfather did so purposely or knowingly. We find the overwhelming weight of the evidence establishes that he did. Therefore, we reverse and remand with instructions to enter a full order of protection against Grandfather.

## Background

Mother filed the petition in this case on May 25, 2023, alleging Grandfather knowingly or intentionally caused or attempted to cause physical harm to Child, placed or attempted to place Child in apprehension of immediate physical harm, coerced Child, harassed Child, and sexually assaulted Child. The court issued an ex parte order of protection that day and scheduled the matter for hearing.

At the October 26, 2023 hearing, the following evidence was adduced: While Grandfather and Child were playing, Grandfather left two abrasions on Child's neck and two bruises – one on his lower back near his buttocks, and one on his inner thigh near his groin – by sucking on and biting Child's skin. The events took place at Grandfather's house while Father was present.

2

Mother testified that she noticed a large abrasion on Child's neck later that day which she said resembled a hickey, a term also used by other witnesses.[2] Child told her that Grandfather sucked on him and bit him while they were playing a game involving "sucking vampires." He told Mother that they were laughing and playing and that the bites hurt, but only for a moment. The photograph of the bruise that Mother took that day depicts a vivid red abrasion on Child's neck and a smaller one next to Child's hairline. The next day, as she helped dress Child for school, she noticed two other marks that she also photographed. The photographs depict a bruise on Child's inner thigh near his groin and another on his back just above his buttocks.

Mother testified that at some point after the incident she spoke to Child about inappropriate touching and encouraged Child to tell her or another trusted adult if he ever felt uncomfortable. Child responded that Grandfather had left marks on him "multiple times." He also told her about an incident in which Grandfather held him down and tickled him while Child begged Grandfather to stop. Child wet himself and then cried and felt humiliated. Then, when Grandfather got dry clothes and dressed Child, he felt uncomfortable.

Mother told the court that she became even more concerned for Child when Child told the Department of Social Services investigator (Investigator) that Grandfather had bitten or sucked on him five to ten times before. She was worried that the behavior would continue or escalate, or that Grandfather was sexually grooming Child.

The Investigator spoke with Mother, Father, and Child in person and with Grandfather over the phone. Grandfather denied all the allegations that Mother reported and denied he caused any marks or injuries on Child. He further denied ever playing "vampires" with Child.

---

[2] A "hickey" in this context is "a temporary red mark or bruise on the skin (as one produced by biting and sucking)." *Hickey*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2014).

Investigator interviewed Child twice and observed the abrasions and bruises on him the day after the incident took place. Investigator stated the bruises did not appear to be the result of discipline or to be accidental and stated, "If we say it was a hickey, it would have been purposeful like you would have to put your lips on a child's neck." She noted that "hickeys" pose a gray area because a hickey is a bruise, which could be considered physical abuse, but the act of a hickey could also be considered an act of sexual abuse. However, in her professional opinion, Investigator could not say for certain whether it was a sexual act.

Investigator also stated, in her report and in her testimony, that the incident did not meet the Department's criteria for physical abuse. In order to meet that criteria, the child must be under eighteen, the alleged perpetrator must have the care, custody, and control of the child, and the child must be injured other than by accidental means or as a result of discipline. Here, Investigator testified the situation did not meet the care, custody, and control element because Father was present and therefore Child was in *his* custody, not Grandfather's.

During her meeting with Child, Investigator asked him if Grandfather had ever done something like this before. Child's initial response was vague, but then he told Investigator that it had happened five to ten times but could not pinpoint any areas where Grandfather had left bruises. Child stated, "Grandpa didn't bite me. Grandpa just has very strong lips." Child did not express to her any fear of Grandfather.

Although Investigator found the allegations here to be unsubstantiated, she expressed concern regarding the risk factors associated with Grandfather's conduct: "Should a grown man's lips be on a child? That to me, I feel like is a risk factor that shouldn't be happening." She noted that the "abuse," or whatever it was, could get worse and that was a risk factor as well.

4

Father testified that he was present while Grandfather interacted with Child that day and witnessed Grandfather biting the back of Child's neck once. He claimed that they were playing, that Child was laughing, and that the game seemed harmless. When he saw the mark on Child's neck, he believed it was a hickey and conceded it was inappropriate to leave a hickey on a six-year-old child.

For his part, Grandfather testified that he remembered playing with Child at his home that day and that he always played and wrestled roughly with Child. He testified that he did not intentionally bite Child anywhere nor did he intentionally suck on or attempt to cause harm to any part of Child's body. He denied putting his lips near Child's inner groin. He admitted, however, that he kissed and nibbled on the back of Child's neck but he did not recall leaving a mark.

That particular day, Grandfather recalled they were playing a game called "Kingslayer's blood" inspired by the television show *Game of Thrones*, rated TV-MA (Mature Audience Only),[3] which they had watched together earlier that day. He agreed that watching *Game of Thrones* may not be appropriate for a six-year-old. He believed Father may have categorized the game as "vampires." He and Child pretended to sword fight in Grandfather's bed and they were laughing and giggling. Lastly, Grandfather testified that he was flabbergasted when he saw the photographs of the abrasions and bruises on Child's body. He did not believe he did anything to cause them. He claimed that he "always put his lips on [Child]. His feet, his arms, I always am kissing and raspberrying him."

---

[3] We take judicial notice of *Game of Thrones*'s television rating. "Judicial notice may be taken of . . . a fact, not commonly known, but which can be readily determined by resort to a readily available, accurate, and credible source." *State v. Gay*, 566 S.W.3d 622, 626 (Mo. App. S.D. 2018).

The guardian ad litem testified he spoke to Mother on two occasions, Father on one occasion, Child's school counselor on two occasions, and he met with Child twice. He did not meet with or speak with Grandfather. He was not confident that the marks constituted abuse but conceded that the determination was up to the trial court. He explained that there was a loving relationship between Child and Grandfather and feared that more harm would result from Child being excluded from that side of the family than any harm associated with what occurred on May 24. Lastly, he noted that he did not believe Mother acted maliciously in filing the petition for the full order of protection; rather, he believed she filed it in good faith due to the "unusual" circumstances.

After trial, the court gave the parties to November 9, 2023, to submit proposed findings and conclusions, and a proposed judgment. On October 26, 2023, Mother requested the court issue findings of fact and conclusions of law including on the questions whether Grandfather's conduct constituted sadism, sexual acts, or sexual assault.[4]

On October 30, 2023, before either party submitted proposed findings and conclusions, the court rendered its judgment denying Mother's petition for a full order of protection upon its finding that Grandfather's conduct did not constitute sexual assault. Although the court expressed concern with Grandfather's inappropriate conduct, it concluded that Mother had failed to establish by a preponderance of the evidence that Grandfather's conduct constituted sexual assault since there was no evidence that Grandfather engaged in the conduct to "arouse or gratify a sexual desire." To arrive at this conclusion, the court, in distinguishing sexual acts versus non-

---

[4] Mother also requested specific findings as to Child's inability to testify, Child's out of court statements, the weight given to the guardian ad litem's testimony, and her attorney's fees. These issues are not relevant to this appeal.

6

sexual acts, considered section 566.010(6)'s definition of "sexual contact" as touching another person's genitals "for the purpose of arousing or gratifying the sexual desire of any person . . . ."

On November 21, 2023, Mother filed her motion for reconsideration or for new trial arguing that in this case a full order of protection only required proof of a battery, not necessarily proof of a sexual act. In denying Mother's motion without a hearing, the court found that although Grandfather caused the abrasions and bruises, the court remained "unconvinced" that the evidence established that a battery occurred under section 455.010(1)(c).

This appeal follows.

## Standard of Review

### *Murphy v. Carron*

In reviewing a full order of protection, the judgment of the trial court will be sustained by the reviewing court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *M.D.L. v. S.C.E.*, 391 S.W.3d 525, 529 (Mo. App. E.D. 2013) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We defer to the trial court's credibility determinations and view all facts and any inferences therefrom favorably to the judgment. *Id.* "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual decisions." *O'Brien v. O'Brien*, 611 S.W.3d 522, 525 (Mo. App. W.D. 2020) (quoting *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014)).

### *Against-the-weight-of-the-evidence challenge*

An against-the-weight-of-the-evidence challenge presupposes the existence of sufficient evidence to support the judgment. *Day v. Hupp*, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017).

"The term 'weight of the evidence' refers to an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.* "To prevail on an against-the-weight-of-the-evidence challenge, a litigant must show that the trial court could not have reasonably found, from the trial record, the presence of a fact necessary to uphold the judgment." *Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 393 (Mo. App. S.D. 2018). Thus, this Court can consider evidence contrary to the trial court's judgment that is not based on a credibility determination. *Day*, 528 S.W.3d at 411. This standard of review "serves only as a check on the trial court's potential abuse of power in weighing the evidence, and we will reverse the judgment only in rare cases, when we have a firm belief that the judgment is wrong." *Id.* at 411-12.

## Discussion[5]

We first address Mother's claim that the trial court erred in finding that Grandfather did not commit a battery on Child and therefore did not satisfy section 455.010(5)'s definition of domestic violence so as to warrant a full order of protection. Unfortunately, the trial court did not explain its observation that it was "unconvinced" that Grandfather committed a battery on Child. From our review of the record, the only possible basis for the court's judgment was that it was unconvinced that Mother had proved the mens rea element of a battery in this context, namely, that Grandfather *knowingly* or *purposely* caused the injuries. Section 455.010(1)(c). And the only evidence relevant to Grandfather's mens rea was his testimony that he did not knowingly or intentionally cause the injuries.

---

[5] We note that each of Mother's points relied on violates the requirements of Rule 84.04. However, this Court prefers to decide appeals on the merits of the case and since we have discretion to excuse technical deficiencies in a brief, we opt to exercise that discretion here. *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998).

Initially, we note that we are dubious that Grandfather's testimony would satisfy the substantial evidence standard under *Murphy v. Carron* because in the context of this case, the testimony appears to be little more than a legal conclusion. *Hoffmeier v. Civ. Serv. Comm'n of St. Louis Metro. Sewer Dist.*, 541 S.W.3d 8, 12 (Mo. App. E.D. 2017) ("To the extent testimony consists of legal conclusions, it is not competent and substantial evidence."). *See also Anslinger v. Christian Hosp. Ne.-Nw.*, 687 S.W.3d 180, 185 (Mo. App. E.D. 2024).

However, Mother has not brought a substantial-evidence challenge, so we are limited to her against-the-weight-of-the-evidence challenge. Yet, even under that more stringent test, we find that the trial court's judgment cannot stand because the extensive and persuasive evidence in the record demonstrates that Grandfather's purposeful sucking and biting behavior constituted a battery such that the court's judgment was against the weight of the evidence.

Since Grandfather's intent is the key issue here, we look to the relevant statutory language in Chapter 455. Under section 455.516.1, if the petitioner proves the allegation of domestic violence by a preponderance of the evidence, the court may issue a full order of protection. "Domestic violence" is "abuse or stalking committed by a family or household member, as such terms are defined by this section." Section 455.010(5) (emphasis added). "Abuse" includes battery which section 455.010(1)(c) defines as "purposely or knowingly causing physical harm to another with or without a deadly weapon."

Now we turn to the record and Grandfather's claim to Investigator that he had no involvement with the sucking, the biting, or the injuries to the Child which claim Grandfather later changed when he testified that he did not *recall* sucking on or biting Child. But the eyewitnesses to his conduct, i.e., Child, Father, and Grandfather's own testimony, repeatedly contradicted Grandfather. Father testified that he saw Grandfather bite Child on the neck that

day. Child told Investigator Grandfather bit him and sucked on him and that he had left marks numerous times before. For his part, Grandfather testified that he was always putting his lips on Child and that he kissed and nibbled on the back of Child's neck that day but did not recall leaving a mark.

And the photographs likewise paint a picture starkly different from Grandfather's claims. The first photograph, taken the day of the incident, depicts a large, red, and raw abrasion on the back of Child's neck with a smaller red abrasion to its right. Other photographs, taken the next day, show smaller marks, one on Child's inner-thigh near his groin, and another on Child's lower back just above his buttocks. In our judgment, it is inconceivable that Grandfather would not "know" or "intend" that his biting and sucking on Child would leave such injuries, particularly given Child's consistent claim that Grandfather had left marks on him "five to ten" times before.

In addition to the alarming photographs, Grandfather admitted that he frequently kisses Child and blows raspberries on Child. But kisses and raspberries are different than the hickey-like abrasions here which were manifestly not from kisses or raspberries but were consistent with the forceful and purposeful sucking on the skin.

In our view, the foregoing evidence, particularly the photographs, have far more persuasive value than Grandfather's self-serving denials which are in the nature of legal conclusions as to the mens rea element of battery under the statute. *See In re R.M.*, 234 S.W.3d 619, 623 (Mo. App. E.D. 2007) (where this Court held the trial court's judgment terminating Father's parental rights was against the weight of the evidence since the record minimized the court's "wholesale reliance" on Mother's testimony); *Hoffmeier*, 541 S.W.3d at 12.

With respect to Grandfather's claim that he did not intentionally bite or suck on Child, we note that the trial court disbelieved Grandfather's testimony that he did not do the acts that

10

caused the injuries. Yet, inconsistently, the court apparently deemed believable Grandfather's conclusory testimony that he did not intentionally or knowingly cause the bruises. In short, the probative value of Grandfather's self-serving claim that he did not *intentionally* cause these injuries is minimal and is overwhelmed by the contrary evidence discussed herein.

This is a very close case and our decision is guided by the goals and purpose of the Child Protection Orders Act, sections 455.500 – 455.538. We are troubled by the epidemic of child abuse generally and child sex abuse specifically of which we are regularly reminded in the cases before us. At the same time, we are loathe to question an in-the-trenches decision of a well-respected jurist like the one *sub judice*. But, Grandfather's troubling and inappropriate conduct, together with the wafer-thin basis upon which the court seems to have rested its finding that Grandfather did not commit a battery on Child, leads us to our decision here. As our standard of review contemplates, this is one of those rare cases in which we believe that the trial court could not having reasonably found what it found and we therefore firmly believe the judgment was wrong. *Day*, 528 S.W.3d at 411-12; *Hurricane Deck Holding Co.*, 548 S.W.3d at 393.

## Conclusion

Based on the foregoing, we reverse and remand the trial court's denial of the full order of protection.[6]

James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

---

[6] Given our disposition of Point I, we need not address Point II. However, if we did, we would deny the point and find that there was substantial evidence to support the trial court's judgment regarding the sexual assault claim and its judgment was not against the weight of the evidence since we believe Grandfather's conduct did not meet the statutory definition of sexual assault.

11